**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF VIRGINIA**
**Alexandria Division**

DAVID M. BROWN,

               *Plaintiff*,

        v.

NAVY FEDERAL CREDIT UNION,

               *Defendant*.

Civil Case No.:

## PRELIMINARY STATEMENT

1.     Plaintiff is a victim of identity theft and unauthorized transactions by unknown perpetrator(s).

2.     On or about February 6, 2024, Plaintiff discovered unauthorized charges on his checking account with Defendant ending in x1392 ("Checking Account") and savings account ending in x9762 ("Savings Account") (collectively, the "Accounts").

3.     The amount transferred from Plaintiff's Account totaled $10,000.00 (the "Stolen Funds").

4.     Plaintiff promptly and repeatedly disputed the transaction(s) with Defendant upon discovery to no avail.

5.     Plaintiff brings claims against Navy Federal Credit Union ("Defendant" or "NFCU") for violations of the Electronic Funds Transfer Act, 15 U.S.C. § 1693 *et seq.* ("EFTA").

## JURISDICTION AND VENUE

6.     The Court has jurisdiction pursuant to 15 U.S.C. § 1693m(g)  and 28 U.S.C. § 1331.

7.     Supplemental jurisdiction exists for the state law claim(s) pursuant to 28 U.S.C. § 1367.

8.      Jurisdiction over Plaintiff's claim for declaratory relief is conferred by 28 U.S.C. § 2201.

9.      Venue is proper in this District because Defendant resides and is headquartered in this jurisdiction and a substantial part of the events and occurrences underlying this litigation occurred within this District.

## PARTIES

10.     Plaintiff David M. Brown is a natural person and citizen of the United States residing in McDonough, Henry County, GA.

11.     Plaintiff is a "consumer" as defined by each of the relevant statutes.

12.     Navy Federal Credit Union is a national banking association formed under the laws of the United States and was, at all times relevant to this Complaint, a financial institution as defined by EFTA, 15 U.S.C. § 1693a(9).

## STATEMENT OF FACTS

13.     Plaintiff maintains a checking account with defendant NFCU ending in x1392 and a savings account ending in x9762.

14.     On or about February 6, 2024, Plaintiff viewed his NFCU account online and discovered two (2) unusual and unauthorized transactions.

15.     The first unauthorized transaction was on January 29, 2024 ("First Unauthorized Transaction") with $5,000.00 transferred from his Savings Account to his Checking Account, and subsequently paid to a certain and unknown "business" on the same day.

16.     The second unauthorized transaction happened on January 30, 2024 ("Second Unauthorized Transaction") for another $5,000.00 which was transferred from Plaintiff's Savings Account to his Checking Account and then moved via ACH payment to a certain "business".

17.    Immediately, Plaintiff called NFCU to dispute these unauthorized transactions. Thereafter, NFCU placed a $10,000.00 provisional credit in Plaintiff's NFCU account.

18.    In a Letter dated March 4, 2024, NFCU denied Plaintiff's claim after concluding that the transactions reported were authorized.

19.    On March 11, 2024, NFCU removed the $10,000.00 provisional credit from Plaintiff's account.

20.    On or about March 12, 2024, Plaintiff appealed NFCU's denial and submitted a duly-executed Security Appeal Form to NFCU.

21.    In a Letter dated May 24, 2024, NFCU refused to reverse its earlier decision and continued to wrongfully maintain that Plaintiff authorized the disputed transactions.

22.    Thereafter, Plaintiff filed a complaint with: 1) the McDonough Police Department on June 27, 2024, Case No. 2024-00014711, and 2) the Consumer Financial Protection Bureau on June 13, 2024, Complaint ID No. 240613-14823938.

23.    Plaintiff did not authorize the two transactions amounting to $10,000.00.

24.    Plaintiff did not receive any notification or warning regarding these transactions.

25.    To date, NFCU has failed to reimburse Plaintiff for the Stolen Funds

## FIRST CAUSE OF ACTION

### Electronic Fund Transfers Act, 15 U.S.C. § 1693 *et seq.*

26.    Plaintiff repeats and re-alleges each of the foregoing paragraphs of this Complaint as if fully set forth herein.

27.    Per the EFTA, Regulation E, and Regulation E's Official Interpretations, Defendant bears the responsibility for unauthorized transfers and withdrawals such as the ones in question.

28.    Pursuant to 15 U.S.C. § 1693g(a), "Unauthorized electronic fund transfers; limit" states in relevant part as follows:

> In no event. . . shall a consumer's liability for an unauthorized transfer exceed the lesser of-
>
> (1) $50; or
>
> (2) the amount of money or value of property or services obtained in such, unauthorized electronic fund transfer prior to the time the financial institution is notified of, or otherwise becomes aware of, circumstances which lead to the reasonable belief that an unauthorized electronic fund transfer involving the consumer's account has been or may be effected.

29. Thus, the consumer's liability for unauthorized use is generally capped at a maximum of $50 for unauthorized transfers.

30. This cap is increased to $500 dollars where the consumer waits more than two business days after becoming aware of the unauthorized transaction to notify the financial institution. 15 U.S.C. 1693g(a)(2).

31. The rules are elucidated in Regulation E, 12 C.F.R. § 1005.6(b):

> (b) Limitations on amount of liability. A consumer's liability for an unauthorized electronic fund transfer or a series of related unauthorized transfers shall be determined as follows:
>
> (1) Timely notice given. If the consumer notifies the financial institution within two business days after learning of the loss or theft of the access device, the consumer's liability shall not exceed the lesser of $50 or the amount of unauthorized transfers that occur before notice to the financial institution.
>
> (2) Timely notice not given. If the consumer fails to notify the financial institution within two business days after learning of the loss or theft of the access device, the consumer's liability shall not exceed the lesser of $500 or the sum of:
>
>> (i) $50 or the amount of unauthorized transfers that occur within the two business days, whichever is less; and
>>
>> (ii) The amount of unauthorized transfers that occur after the close of two business days and before notice to the institution, provided the institution establishes that these transfers would not have occurred had the consumer notified the institution within that two-day period.

32.     Denials based on a consumer's alleged negligence are expressly prohibited under the EFTA's implementing regulations. See Consumer Financial Protection Bureau, Comment for 1005.6 Liability of Consumer for Unauthorized Transfers, 6(b)(2) ("Negligence by the consumer cannot be used as the basis for imposing greater liability than is permissible under Regulation E. Thus, consumer behavior that may constitute negligence under state law, such as writing the PIN on a debit card or on a piece of paper kept with the card, does not affect the consumer's liability for unauthorized transfers.")

33.     Defendant violated 15 U.S.C. § 1693g by refusing to reimburse Plaintiff in the amount of the unauthorized charges at issue.

34.     The EFTA places the burden of proof on the financial institution to demonstrate that challenged transfers were authorized.  15 U.S.C. § 1693g(b).

35.     Defendant cannot meet its burden of proof here, where Plaintiff:

   a)     Promptly disputed the transactions;

   b)     Provided details regarding the unauthorized access of his account

   c)     Provided a police report;

   d)     Has no criminal history;

   e)     Has no history of filing false disputes; and

   f)     The thefts are inconsistent with Plaintiff's pattern of use.

36.     Defendant also violated the EFTA by failing to provide any meaningful explanation of the grounds upon which it relied in denying Plaintiff's claim. 15 U.S.C. § 1693f(d).  *See* CFPB Supervisory Highlights, Issue 22, Summer 2020, Section 2.3.3 ("Financial institutions must go beyond just providing the findings to actually explain or give the reasons for or cause of those findings.").

37.     As a direct and proximate result of Defendant's conduct, Plaintiff has suffered actual damages, including but not limited to past and future monetary loss, past and future mental distress, emotional anguish, and other damages that will be presented to the trier of fact.

38.     Defendant did not conduct a good faith investigation regarding the stolen funds.

39.     Defendant did not have a reasonable basis for believing the account was not in error based on the evidence Plaintiff provided to Defendant.

40.     Specifically, Defendant's conduct as set forth herein constitutes a failure to investigate in good faith and a failure to establish a reasonable basis for believing that Plaintiff's account was not in error, and also constitutes a knowing and willful conclusion that Plaintiff's account was not in error when such conclusion could not reasonably have been drawn from the available evidence, and for this reason constitutes a violation of § 1693f(e), entitling Plaintiff to treble damages in addition to all other relief sought herein.

41.     As a direct and proximate result of Defendant's violations of the EFTA, Plaintiff is entitled to declaratory judgment, actual damages, statutory damages, treble damages, costs and reasonable attorneys' fees.

## SECOND CAUSE OF ACTION

### Negligence

42.     Plaintiff repeats and re-alleges each of the foregoing paragraphs of this Complaint as if fully set forth herein.

43.     Because Plaintiff is a member of  Defendant NFCU, Defendant NFCU owed Plaintiff a duty of reasonable care.

44.     Defendant breached that duty by failing to take reasonable efforts to protect the Account from fraudulent activity and to ensure that the Account was not used for illegal and improper activity.

45.     In particular, Defendant breached its duty to exercise reasonable care by not preventing or flagging as suspicious the Unauthorized Transfers without confirmation from Plaintiff.

46.     Defendant's conduct harmed Plaintiff because Plaintiff did not authorize the Unauthorized Transfers, yet NFCU processed the transfers.

47.     As a direct and proximate result of Defendant's conduct, Plaintiff suffered actual damages, including but not limited to past and future monetary loss, past and future emotional distress and anguish, and other damages that will be presented to the trier of fact.

## DEMAND FOR JURY TRIAL

Pursuant to Federal Rule of Civil Procedure 38, Plaintiff hereby demands a trial by jury of all issues triable by jury.

## PRAYER FOR RELIEF

**WHEREFORE,** Plaintiff seeks judgment in his favor and requests that the Court:

A.      Award Plaintiff actual damages, treble damages, statutory damages, punitive damages, costs, and reasonable attorneys' fees; and

B.      Grant such other and further relief, including equitable and declaratory relief, as may be necessary, just, and proper.

Dated: January 21, 2025


*/s/ Craig C. Marchiando*
Craig C. Marchiando
CONSUMER LITIGATION ASSOCIATES, P.C.
763 J. Clyde Morris Blvd., Suite 1-A
Newport News, VA 23601
T. 757-930-3660
F  757-930-3662
E: craig@clalegal.com

Daniel A.Schlanger (*Pro Hac Vice* forthcoming)
Schlanger Law Group, LLP
60 East 42nd Street
46th Floor
New York, NY 10017
T: 212-500-6114
F: 646-612-7996
E: dschlanger@consumerprotection.net

*Counsel for Plaintiff*